Donald L. BRINK, Jr. & Donna J. Brink, his wife, Appellants

v.

ERIE INSURANCE GROUP, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 28, 2007.

Filed Jan. 4, 2008.

---

Richard A. Sadlock, Harrisburg, for appellants.

Thomas B. Schmidt, III, Harrisburg, for appellee.

BEFORE: LALLY–GREEN, DANIELS, and JOHNSON*, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellants, Donald L. Brink, Jr. and Donna J. Brink, appeal from the order entered on October 20, 2006. The order in question granted the motion for judgment on the pleadings filed by Appellee, Erie Insurance Group ("Erie"), and denied Appellants' cross-motion for judgment on the pleadings. After careful review, we affirm.

¶ 2 The trial court described the facts and procedural history of this case as follows:

> [Appellants], Donald and Donna Brink, purchased personal automobile insurance from ... [Erie] ... which provided coverage for [Appellants] and their son between the dates of December 18, 2003 and December 18, 2004. The auto insurance policies issued by [Erie] also included UIM [Underinsured Motorist] coverage.
>
> In 2004 ..., Donald Brink was an employee of the Swatara Township Police Department where his duties includ-

---

* This decision was reached prior to the retirement of Judge Johnson.

ed responding to motor vehicle accidents and operating police vehicles. On September 8, 2004, Officer Brink was called to respond to an incident and did so in one of the police department's vehicles. In the course of his responding to the incident that evening, he was involved in [an] automobile accident in which he suffered physical injury. The other motorist involved in the accident was not covered by liability insurance in amounts sufficient to fully compensate Officer Brink for his injuries. Officer Brink and his wife then filed a claim with [Erie] to recover UIM benefits under their insurance policy.

[Erie] denied Officer Brink's claim citing Exclusion 10 of the UIM policy in a section entitled "LIMITATIONS ON OUR DUTY TO PAY" including a subheading "What we do not Cover—Exclusions." Exclusion 10 reads, "[b]odily injury to you or a resident using a non-owned motor vehicle or a non-owned miscellaneous vehicle which is regularly used by you or a resident, but not insured for Uninsured or Underinsured Motorists Coverage under this policy."

On January 24, 2006, [Appellants] filed a complaint alleging that [Erie] breached the insurance contract by refusing to pay UIM benefits to [Appellants] under the policy and asserting that [Erie] acted in bad faith in denying those benefits to Appellant without reasonable justification. On March 10, 2006, [Erie] filed an Answer with New Matter and Counterclaim denying [Appellants'] allegations and seeking declaratory judgment of its rights and obligations under the Policy, particularly with respect to the Endorsement and Exclusion 10. On March 16, 2006, [Appellants] filed a Reply to New Matter and Counterclaim. On May 23, 2006, [Erie] filed a Motion for Judgment on the Pleadings. [Appellants] filed a response to [Erie's] Motion and a Cross–Motion for Judgment on the Pleadings on June 8, 2006.

Trial Court Opinion, 10/20/06, at 1–2. Following oral argument on the parties' motions, the trial court entered an order on October 20, 2006, which granted Erie judgment on the pleadings and denied Appellants' cross-motion for judgment on the pleadings. This appeal followed.[1]

¶ 3 Appellants raise the following issues on appeal:

  I. Did the Lower Court commit an error of law in its denial of [Appellants'] Motion for Judgment on the Pleadings and granting [Erie's] Motion for Judgment on the Pleadings where Officer Brink's use of a police vehicle was not "regular" as required by the exclusion?

  II. Did the Lower Court commit an error of law in its denial of [Appellants'] Motion for Judgment on the Pleadings and granting [Erie's] Motion for Judgment on the Pleadings because Office [sic] Brink had a reasonable expectation of coverage?

  III. Did the Lower Court commit an error of law in its denial of [Appellants'] Motion for Judgment on the Pleadings and granting [Erie's] Motion for Judgment on the Pleadings because the ... exclusion is against clearly stated public policy?

Appellants' Brief at 4.

¶ 4 All of Appellants' issues are interrelated and challenge the trial court's order of matters complained of on appeal pursuant to Pa.R.A.P. 1925.

---

1. The record fails to reflect that the trial court ordered Appellant to file a concise statement

granting Erie judgment on the pleadings. As such, we will address Appellants' claims in accordance with the following scope and standard of review:

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034[.] Thus, in reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court is based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only where the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Integrated Project Services v. HMS Interiors, Inc.*, 2007 PA Super 246, ¶ 19, 931 A.2d 724.

¶ 5 Appellants make two arguments in their first issue. First, Appellants assert that the language of the "regular use" exclusion in their insurance policy was ambiguous. Second, Appellants contend that the exclusion did not apply because Officer Brink's use of the police car was not "regular."

¶ 6 First, we address whether the "regular use" exclusion in the policy was ambiguous. Our Supreme Court has set forth the following rules for interpreting insurance contracts:

The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, a court is required to give effect to that language. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. Finally, in determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly. Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

*401 Fourth Street, Inc. v. Investors Insurance Group*, 583 Pa. 445, 879 A.2d 166, 171 (2005) (internal quotes and citations omitted).

¶ 7 While personal insurance policies in Pennsylvania frequently include exclusions for regularly used, non-owned vehicles, such exclusions have been rarely addressed by Pennsylvania's appellate courts. Our review of Appellants' claims

**532**

is guided, in part, by this Court's 1993 decision in *Crum & Forster Personal Insurance Company v. Travelers Corporation*, 428 Pa.Super. 557, 631 A.2d 671 (1993). In *Crum & Forster*, the insured's son was involved in an accident while driving his grandparent's vehicle. The insured's son admitted that he had operated his grandparent's vehicle approximately five times per week for the four years preceding his accident. The insurer claimed that the "regular use" exclusion for family members[2] applied because the insured's son regularly used the grandparent's vehicle and that vehicle was not insured under insurer's policy. The trial court granted summary judgment in favor of the insurer.

¶ 8 On appeal, this Court affirmed and interpreted the "regular use" exclusion under the insurance policy. The Court first explained the purpose behind such exclusions as follows:

The clause in question represents an attempt on the part of the insurance company to strike a balance between the desire of the insured to be covered, even though not using his own car, and its own right to receive payment of premiums based upon the risk presented by the number of automobiles operated. It is generally held that such a clause covers the insured during infrequent or casual use of a nonowned automobile, but excludes coverage as to another's automobile which the policyholder frequently uses or has the opportunity to use … [.][T]he exclusion prevents abuse by pre-

cluding the insured and his family from regularly driving two or more cars for the price of one policy.

*Id.* at 673 (internal quotes and citations omitted).

¶ 9 The *Crum & Forster* Court then concluded that the exclusion for "regular use" for family members was not ambiguous and should be given its ordinary meaning. *Id.* at 673. This Court explained that "[t]he words 'regular use' suggest a principal use as distinguished from a casual or incidental use, and such a regular use is not covered. 'Regular use' means 'habitual use' as opposed to occasional or incidental use." *Id.* (citation omitted).

¶ 10 The Court concluded that ordinary meaning of this exclusion was that where an insured habitually used or "regularly used" a family vehicle that was not insured under the insurer's policy, no coverage would exist. Thus, since the insured's son regularly used a family vehicle, *i.e.*, the grandparent's vehicle, that was not insured under the insurer's policy, he was not entitled to coverage under the policy. The Court, therefore, affirmed the entry of summary judgment in favor of the insurance company.

¶ 11 In Appellants' case, we observe the language of the "regular use" exclusion, which states as follows:

LIMITATIONS ON OUR DUTY TO PAY

What We Do Not Cover–Exclusions

This insurance does not apply to:

3. Any vehicle, other than your covered auto, which is:
a. owned by any family member; or
b. furnished or available for the regular use of any family member.
*Crum & Forster*, 631 A.2d at 672.

---

**2.** The policy exclusion in question in *Crum & Forster* provided, in pertinent part, as follows:
B. We do not provide Liability Coverage for the ownership, maintenance or use of:
2. Any vehicle, other than your covered auto, which is:
a. owned by you; or
b. furnished or available for your regular use.

10. Bodily injury to you or a resident using a non-owned motor vehicle or a non-owned miscellaneous vehicle which is regularly used by you or a resident but not insured for Uninsured or Underinsured Motorists Coverage under this policy.

See Erie's Answer and New Matter–Exhibit A, 3/10/06, at 2–3. While the language at issue in *Crum & Forster* dealt with the family ownership exclusion, we conclude that the analysis in *Crum & Forster* applies to Appellants' case, at least with regard to a claim of ambiguity. Accordingly, we analyze the applicability of the exclusion by giving effect to the ordinary meaning of the language of the exclusion in Appellants' policy. *See also 401 Fourth Street, supra.* Here, the ordinary meaning of the exclusion is that the vehicle had to be "regularly used" or "habitually used," as opposed to "occasionally" or "incidentally" used. Thus, the exclusion is not ambiguous.

¶ 12 Next, we examine whether Appellant, Officer Brink, "regularly" used or "habitually used" the vehicle. Appellants assert that Officer Brink's use of the police vehicle was merely "occasional or incidental." *See* Appellants' Brief at 11. Appellants argue that although Officer Brink drove a police car within the scope of his employment, his use of the vehicle involved in the incident was not "regular" because he was not assigned a specific car from the fleet, he had no vehicle available for his use, and he was not authorized to use a vehicle for personal reasons. *Id.* at 9.

¶ 13 In addition to *Crum & Forster,* we look to several federal district court cases where the courts have addressed "regular use" exclusions. While the decisions of such courts do not control our decision, they have persuasive value. The first is *Calhoun v. Prudential General Insurance Company,* 2005 WL 1154599, 2005 U.S. Dist. LEXIS 44302 (M.D.Pa.2005), where a state police trooper was injured in an accident while driving a police vehicle. After the trooper sought underinsured motorist coverage under his personal insurance policy, the insurance company denied coverage based on the policy's "regular use" exclusion.[3] The trooper argued, in his motion for summary judgment, that the "regular use" exception did not apply because the vehicle he was driving at the time of the accident was part of a fleet, and because he had not driven that vehicle prior to the night of the accident. Also, the trooper asserted that since it was impossible for him to purchase UIM insurance on a police vehicle, public policy mandated that he be able to recover under his own insurance policy.

¶ 14 The District Court ruled that "regular use" meant that a vehicle was "available" for use by the employee, explaining:

[C]ourts that have addressed the applicability of the regularly used, non-owned vehicle exclusion clause to fleet vehicles have found that such vehicles are excluded from coverage. *Prudential Property and Cas. Ins. Co. v. Peppelman,* 2003 U.S. Dist. LEXIS 7650 at *14 (E.D.Pa.2003) (finding that employee was a passenger in a non-owned, regularly used vehicle when it was clear that the employee would be using an employer-owned vehicle every working day, whether it was the vehicle specifically assigned to him or another employer-

---

3. The exclusion in the policy in question in *Calhoun* provided as follows:

We will not pay for bodily injury or property damage, caused by anyone using a non-owned motor vehicle or trailer not insured

under this part, that is furnished or made available for the regular use by you or a household resident.

*Calhoun,* 2005 WL 1154599, at *2, 2005 U.S. Dist. LEXIS 44302, at *4–5.

owned vehicle); *Prudential Property and Cas. Ins. Co. v. Hinson,* 277 F.Supp.2d 468, 477 (E.D.Pa.2003) (finding that an employee was a passenger in a non-owned, regularly used vehicle when one of two employer vehicles were available for his use during his work hours); *Prudential Prop. & Cas. Ins. Co. v. Armstrong,* 2004 U.S. Dist. LEXIS 4918, 2004 WL 603416 at *5 (E.D.Pa. 2004) (finding that an employee was a passenger in a non-owned, regularly used vehicle when the employer's vehicles were available for his use even if he did not use one every day). In these cases, the courts found that "regular use" was not limited to the actual use of the vehicle that was involved in the accident. Rather, "regular use" meant that a vehicle was "available" for use by an employee. *Peppelman,* 2003 U.S. Dist. LEXIS 7650 at *7–8; *Hinson,* 277 F.Supp.2d at 474–475; *Armstrong,* 2004 U.S. Dist. LEXIS 4918, 2004 WL 603416 at *2, 4; *see also Automobile Ins. Co. of Hartford v. Curran,* 994 F.Supp. 324, 330 (E.D.Pa.1998) ("[I]t has been recognized that the test of a regular use exclusion is not use but availability for use or ownership by a member of a group who would be likely to make their cars available for each other's use."). *Id.* at *2, 2005 U.S. Dist. LEXIS 44302, at *6–7.

¶ 15 The *Calhoun* court concluded that it did not matter whether the trooper used the same vehicle each time he drove, and that "[s]ince the State Police vehicles were available for Trooper Calhoun's use while he was working, the regularly used, non-owned vehicle exclusion clause bars recovery[.]" *Id.* at *3, 2005 U.S. Dist. LEXIS 44302, at *8. Hence, the court granted summary judgment in favor of the insurance company.

¶ 16 An injured employee who was a passenger in a PennDOT "crash truck" sought UIM benefits for injuries in *Liberty Mutual Insurance Group v. Johnson,* 2007 WL 1726518, 2007 U.S. Dist. LEXIS 43278 (W.D.Pa.2007). There, the United States District Court for the Western District of Pennsylvania granted summary judgment to the insurance company. The insured, Johnson, was injured in the course of his employment as part of a cleaning crew with PennDOT,[4] when he was a passenger in one of PennDOT's "crash trucks." When Johnson sought underinsured motorist benefits under his personal automobile insurance policy, the insurance company denied the claim, citing the "regular use" exclusion in the policy. Johnson argued that the "regular use" exclusion did not apply because his use of the crash truck was not "regular." He argued that he used the crash trucks approximately four nights per month for only six months in a year, that he had no access to the keys to the trucks because PennDOT allowed Johnson access to the keys only with a supervisor's approval, and that nobody on the cleaning crew was permitted to use the crash trucks for personal reasons.

¶ 17 The court granted summary judgment for the insurance company, explaining as follows:

> It is undisputed that [PennDOT] provided the crash trucks and wash truck for systematic and repeated use by the cleaning crew for the performance of their job duties. Johnson used a crash truck on a repetitive, predictable schedule and they were readily obtainable by him. Thus, the facts set forth by [Johnson,] which resulted in less frequent actual use of the actual truck involved in the accident are irrelevant. It is indis-

---

4. Pennsylvania Department of Transportation.

putable that Johnson's use of the crash truck was a principal and habitual part of his job and no reasonable jury could conclude that his use was casual, occasional or incidental. Accordingly, the "regular use" exclusion applies and [the insurers] properly denied coverage.

*Id.* at *3, 2007 U.S.Dist. LEXIS 43278, at *8.

¶ 18 In Pennsylvania, the test for "regular use" is whether the use is "regular" or "habitual." *Crum & Forster*. Federal courts have held that an employee "regularly uses" a fleet vehicle if he regularly or habitually has access to vehicles in that fleet. Regular use of any **particular** vehicle is not required. *See e.g., Calhoun.* We find this analysis persuasive and hereby adopt it.

¶ 19 We now turn to the certified record in order to determine whether the "regular use" exclusion applied, *i.e.*, whether Officer Brink had "regular" access to the fleet of which the particular vehicle was a part. Appellants admitted, in their underlying complaint, that Officer Brink is an employee of Swatara Township Police Department and that his employment duties include investigating complaints, responding to motor vehicle accidents, and operating police vehicles and other police equipment. *See* Complaint, 1/24/06, at 2. Appellants further admitted that Officer Brink was injured in an accident after he responded to a call to investigate an incident during the course and scope of his employment. *Id. See also* Plaintiff's Reply to New Matter and Counterclaim, 3/16/06, at ¶ 53.

¶ 20 The record also reflects that the Swatara Township Police Department provided Officer Brink access to police vehicles in order to perform the duties of his job, and that Officer Brink was injured during the performance of his duties. The fact that Officer Brink did not always use the particular vehicle in which the accident occurred, or any other police vehicle on a daily basis, does not govern whether a vehicle was "available" to him at his employment. Said another way, his use was "regular" under the exclusion. *See Calhoun; Johnson.* Accordingly, we conclude that Appellants' argument that the exclusion did not apply because his use of the vehicle was not "regular" fails.

¶ 21 In their second issue, Appellants present an alternative argument. Appellants assert that even if coverage was properly denied under the strict terms of the "regular use" exclusion, they nevertheless were entitled to receive UIM benefits under the policy based on their reasonable expectation of coverage. *See* Appellants' Brief at 11. Appellants claim that Erie, through its agent, had knowledge that Officer Brink worked as a police officer and that he used a police vehicle within the scope of his employment. Appellants argue that Erie's agent created a reasonable expectation that Officer Brink would be covered under the policy while he was operating police vehicles, and that this expectation must prevail over the strict terms of the exclusion.

¶ 22 This Court has often stated that:

The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. However, while reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.

*Donegal Mutual Insurance Company v. Baumhammers*, 893 A.2d 797, 819 (Pa.Su-

per.2006) (*en banc*), *quoting McAllister v. Millville Mutual Insurance Company*, 433 Pa.Super. 330, 640 A.2d 1283, 1288 (1994); *see also Scott v. Southwestern Mutual Fire Association*, 436 Pa.Super. 242, 647 A.2d 587, 590 (1994), *appeal denied*, 539 Pa. 694, 653 A.2d 1232 (Pa.1994).

¶ 23 *Baumhammers* commands that where the language of the "regular use" exclusion is clear and unambiguous, the reasonable expectations of a party are not controlling. Here, since we resolved that the exclusion was not ambiguous, we need not examine Appellants' contention that since the agent knew Officer Brink was a police officer and that he used a police vehicle in the scope of his employment, Officer Brink reasonably expected coverage. *See Baumhammers*, 893 A.2d at 819. We also observe that Appellants have not alleged fraud or misrepresentation on the part of Erie's agent to induce them to agree to the terms of the policy. For these reasons, Appellants' claim that they are entitled to UIM benefits based on a reasonable expectation of coverage under their policy fails.

■ ¶ 24 In their final issue, Appellants assert that the application of the "regular use" exclusion under the facts of this case would violate Pennsylvania public policy. *See* Appellants' Brief at 15. Appellants concede that our Supreme Court held that "regular use" exclusions are valid as against public policy attacks in *Burstein v. Prudential Property & Casualty Insurance Company*, 570 Pa. 177, 809 A.2d 204, 208 (2002). Yet, Appellants assert that the reasons expressed by the Court for vali-

dating the exclusion in *Burstein* are not applicable here.

¶ 25 The facts of *Burstein* are relevant to our analysis of Appellants' argument. In *Burstein*, the insureds, a husband and wife, were traveling in a vehicle provided to the wife by her employer. The Bursteins were injured when a motorcycle struck the vehicle. The husband was the driver at the time of the accident. After the motorcyclist's insurer paid the maximum amount under the liability limits, the Bursteins sought underinsured motorist coverage under their personal insurance policy with Prudential. Prudential denied the claim based on the policy exclusion for regularly used, non-owned vehicles.[5] The Bursteins filed suit and argued that the "regular use" exclusion violated public policy. The Bursteins prevailed in the trial court and, subsequently, a divided *en banc* panel of this Court affirmed.[6]

¶ 26 On appeal, the Supreme Court reversed and determined that "regular use" exclusions in automobile insurance policies do not violate public policy. In addressing this issue, the Court looked to the policy underlying the Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"). The Court noted that while "other public policies may underlie the MVFRL, the 'legislative concern for the spiraling consumer cost of automobile insurance' is the dominant and overarching public policy." *Id.* at 208 n. 3, *quoting Paylor v. Hartford Insurance Company*, 536 Pa. 583, 640 A.2d 1234, 1235 (1994). The Court added that:

> In light of the primary public policy concern for the increasing costs of auto-

---

**5.** The policy exclusion in question in *Burstein* provided as follows:

> We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident.

*Burstein*, 809 A.2d at 207.

**6.** *See Burstein v. Prudential Property & Casualty Insurance Company*, 742 A.2d 684 (Pa.Super.1999) (*en banc*).

mobile insurance, it is arduous to invalidate an otherwise valid insurance contract exclusion on account of that public policy. This policy concern, however, will not validate any and every coverage exclusion; rather, **it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure.** Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively.

*Burstein*, 809 A.2d at 208 (emphasis added).

¶ 27 The Court also observed that:

Several dynamics affect an insurer's risks pertaining to an insured's regular use of a non-owned car: the type of car; the safety features of the car; the cost of repairing and maintaining the car; the miles regularly logged on the car; etc. To illustrate, if an insured's employer-provided car offered only nominal safety features, the risk of injury would be far greater than if the insured were driving a vehicle that boasted state-of-the-art safety features. In effect, the heightened risks increase the probability that damages will exceed a tortfeasor's liability policy and, thereby, trigger an insured's UIM coverage; once UIM coverage is invoked, the risks then increase the amount payable under the coverage. Here, these risks flowed with the employer-provided vehicle and not Mrs. Burstein; thus, it is illogical to conclude that the benefits should follow Mrs. Burstein without proper compensation to the insurer.

*Id.* at 209. The Court then held that the "regularly used, non-owned car exclusion and its contractual restraint on UIM portability comport with the underlying policies of the MVFRL." *Id.* at 210.

¶ 28 Here, Appellants argue that Erie took on a known risk at the time of contract and, therefore, *Burstein* should not apply. Appellants contend that Erie knew at the time of the contract that Officer Brink was employed as a police officer and that in the course of his employment, he operates police vehicles. Because Erie took on a **known** risk when it entered the insurance contract, Appellants argue the public policy concerns articulated in *Burstein* are not applicable here. *See* Appellants' Brief at 16.

¶ 29 Appellants' argument fails for the following reasons. While Erie, through its agent, knew that Officer Brink was employed as a police officer, it does not follow that Erie knew the risk or accepted the risk, because other factors weigh into whether a risk is known and accepted. Those factors include the safety features of the vehicle (or vehicles) in question, and the aggregate mileage that the policyholder will likely drive. *Burstein.* Appellants did not allege in their pleadings that they disclosed to Erie the make, model, or safety features of the vehicles that Swatara Township provided for use by its police officers, or of the specific amount of driving that Officer Brink typically did on the job. Therefore, even if Erie knew the risks associated with Officer Brink's employment as a police officer, we cannot infer that Erie accepted the risk of insuring him while operating police vehicles on a regular basis.

¶ 30 Also, to accept Appellants' argument would be to force Erie to subsidize an uncompensated risk. Appellants did not allege in their pleadings that they paid an increased premium under the policy based on the nature of Officer Brink's on-the-job driving duties. Therefore, if we were to invalidate the "regular use" exclusion under the facts of this case, we would be forcing Erie to subsidize an uncompen-

sated risk, which is what the Supreme Court sought to eliminate in *Burstein.* In conclusion, since the application of the "regular use" exclusion in this case does not violate public policy under *Burstein,* Appellants' argument fails.[7]

¶ 31 For the reasons set forth above, we affirm the order granting judgment on the pleadings to Erie.

¶ 32 Order affirmed.

¶ 33 DANIELS, J.: concurs in result.

**7.** While we conclude that, under *Burstein,* Appellants' public policy argument fails, and note that the federal courts have broadly interpreted *Burstein* to apply to fleet vehicles used for public safety purposes, we observe that the Court limited its decision in *Burstein* to its facts. 809 A.2d at 204. The *Burstein* Court said that employees who drive employer-provided vehicles should take "affirmative steps to determine whether the employer-provided vehicle [is] insured and, if so, with what types of coverage." *Id.* at 209. The Court, in effect, said that the employee has the responsibility to inquire as to the extent of UIM coverage provided by the employer on its provided vehicles. Once the employee determines that the employer does not have the hoped-for coverage, the Court said the employee has one of three options: (1) the employee can drive without the UIM coverage (because Pennsylvania does not require it); (2) the employee can attempt to obtain UIM coverage by either negotiating with the employer to provide it or privately purchasing coverage; or (3) the employee can refuse to drive an employer-provided vehicle. *Id.*

The *Burstein* options may not be available to police officers. Unlike private sector employees, police officers may not be able, as members of a union, to make such inquiry of an employer, to try to negotiate with the employer or to refuse to drive the municipality-provided police vehicles. Further, private purchase of UIM benefits may not be a realistic option because such insurance may not be available.

We decline to do more than make the above observations. While the issue is better addressed by the legislative or the executive branch, we do observe that the facts of *Burstein* are different from the facts in this case.