J-A05027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL RAWL, AN INDIVIDUAL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GEICO INDEMNITY COMPANY, A | : | No. 1086 WDA 2019 |
| CORPORATION | : | |

Appeal from the Order Entered July 1, 2019
In the Court of Common Pleas of Beaver County Civil Division at No(s):
11435-2018

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 8, 2020**

Michael Rawl appeals from the July 1, 2019 order granting summary judgment in favor of GEICO Indemnity Company, a Corporation ("GEICO") in this declaratory judgment action.  After review, we affirm.

This is an underinsured motorist insurance ("UIM") dispute arising out of an April 25, 2017 automobile accident in Brighton Township, Beaver County, Pennsylvania.   Mr. Rawl and his insurer, GEICO, filed cross-motions for summary judgment based on the following stipulated facts:

1.   At all times hereto, plaintiff, Michael Rawl, was the named insured on a policy of insurance issued by GEICO Indemnity Company and providing $15,000 of underinsured motorist coverage with stacking.

---

[*] Retired Senior Judge assigned to the Superior Court.

2. Michael Rawl insured three vehicles under the policy, so the applicable limits of underinsured motorist coverage are $45,000.

3. The policy contains an underinsured motorist amendment which contains a regular use exclusion which reads as follows:

When This Coverage Does Not Apply

9. When using a motor vehicle furnished for the regular use of you, your spouse, or a relative who resides in your household, which is not insured under this policy.

A copy of the insurance policy is attached to the Complaint as Exhibit 1 and is incorporated herein by reference.

4. On April 25, 2017, Michael Rawl was involved in a motor vehicle accident with Jessica Geier on Beaner Hollow Road in Brighton Township, Beaver County, Pennsylvania.

5. The accident was entirely the fault of Jessica Geier.

6. Michael Rawl sustained serious injuries as a result of the accident.

7. At the time of the accident, Jessica Geier was insured on a policy of insurance provided by Progressive Insurance Company with a limit of $50,000.

8. Progressive tendered its limit of $50,000 to Michael Rawl.

9. GEICO consented to the settlement and waived subrogation rights against Ms. Geier.

10. At the time of the accident, Michael Rawl was occupying a Dodge Ram van which had been rented by his employer, State Industrial Products, from Enterprise Rent-A-Car.

11. Michael Rawl was using the Dodge Ram rental van because his employer's regular work van was out of service on the date of the accident.

12. The Dodge Ram rental van was insured by Travelers Insurance Company and provided $35,000 in underinsured motorist coverage, which Mr. Rawl has received.

13. Michael Rawl has made a timely demand to GEICO for underinsured motorist benefits.

14. GEICO has denied Mr. Rawl's claim based on the regular use exclusion contained in the underinsured motorist policy amendment as GEICO believes the Dodge Ram rental van in question was a temporary substitute vehicle for Mr. Rawl's work van.

15. The Dodge Ram rental van was not part of the regular fleet of vehicles owned and operated by State Industrial Products.

16. Rawl picked up and rented the Dodge Ram rental van from Enterprise in Cranberry, Pennsylvania only one or two days before the subject accident occurred.

17. Rawl did not on any prior occasion operate that same Dodge Ram rental van for any purpose.

18. Rawl's employer does not permit use of work vehicles for personal purposes or transportation of passengers.

Trial Court Opinion, 7/1/19, at 1-3. In addition to the foregoing stipulated facts, the trial court considered the facts admitted in the pleadings.

The trial court granted summary judgment in favor of GEICO and denied Mr. Rawl's motion for summary judgment, concluding that the regular use exclusion precluded UIM coverage under the policy. Mr. Rawl filed a timely appeal and complied with Pa.R.A.P. 1925(b). He presents five questions for our consideration:

I.  In utilizing the regular use exclusion to deny underinsured motorist coverage to Plaintiff (hereinafter "Rawl"), did the Lower Court err in concluding that an Enterprise rental van, having been operated by Rawl for only one or two days before the subject accident, was available for Rawl's regular use as a fleet vehicle of his employer where said conclusion was contrary to the Stipulation of Facts by the parties that the rental van was not part of the regular fleet of vehicles owned and operated by Rawl's employer, that it was never available to Rawl on any prior occasion and Rawl had used the rental van for only one or two days before the subject accident and where there was no evidence of record that Rawl had ever previously used any Enterprise rental vehicle as part of his employment?

II. In utilizing the regular use exclusion to deny underinsured motorist coverage to Rawl, did the Lower Court err in concluding that the definitions in the liability section of the subject automobile insurance policy, which define regular use in the context of a rental vehicle, were inapplicable to the underinsured motorist coverage section definitions on the basis that the subject policy was not ambiguous as to the regular use exclusion and the "mutually exclusive" definitional sections (Page 16 of the Memorandum Opinion) where, to the contrary, the subject policy contained language expressly incorporating those definitions into the underinsured motorist coverage?

III.  In utilizing the regular use exclusion to deny underinsured motorist coverage to Rawl, did the Lower Court err in concluding that the Enterprise rental van was simply a replacement for the "available" work vehicle and therefore available for Rawl's regular use where said conclusion was in contravention of the express policy definition that a non - owned auto, in the context of a rental vehicle, will only be considered as furnished for regular use when rented for more than 30 days and the subject Enterprise rental van had been rented only 1-2 days before the accident?

IV. In utilizing the regular use exclusion to deny underinsured motorist coverage to Rawl, did the Lower Court err in concluding that the Enterprise rental van was a "temporary substitute" for Rawl's regular work van, relying upon the "plain and ordinary meaning" of those words rather than the express definition set forth in the subject policy, where the Lower Court

had concluded that the Enterprise rental van could not be a temporary substitute under the express definition in the subject policy (Pages 14-15 of the Memorandum Opinion) and absent any factual support that Geico actually denied the claim on that basis?

V. In utilizing the regular use exclusion to deny underinsured motorist coverage to Rawl, did the Lower Court err in concluding that Rawl "apparently argues that the rented van in question was a temporary substitute that would be included within the definition of insured motor vehicle for underinsured motorist coverage purposes . ." where said conclusion was directly contrary to the argument posited by Rawl, which was that that the rental van did not qualify as a temporary substitute under the express terms of the subject policy?

Mr. Rawl's brief at 3-5.

We are reviewing the grant of summary judgment. The applicable law is well settled:

> An appellate court may reverse the grant of a motion for summary judgment if there has been an error of law or an abuse of discretion. Since the issue as to whether there are no genuine issues as to any material fact presents a question of law, our standard of review is *de novo*; thus, we need not defer to the determinations made by the lower tribunals. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. We must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.***, 941 A.2d 706, 712 (Pa.Super. 2007) (quoting ***Chanceford Aviation Properties, LLP. v. Chanceford Twp. Bd. of Supervisors***, 923 A.2d 1099, 1103 (Pa. 2007) (internal citations omitted)).

Summary judgment is appropriate "when the record clearly shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010); **see also** Pa.R.C.P. 1035.2(1). Both parties alleged that there are no genuine issues of material fact. Thus, coverage was a question of law for the trial court. As with all questions of law, our scope of review is plenary and our standard of review is *de novo*. **Rother v. Erie Insurance Exchange**, 57 A.3d 116, 118 (Pa.Super. 2012)

As this case involves the interpretation of an automobile insurance policy, the following principles inform our review. "Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation." **Adamitis v. Erie Ins. Exch.**, 54 A.3d 371, 379-380 (Pa.Super. 2012). As with contracts generally, when the words of the agreement are clear and unambiguous, we ascertain the intent of the parties from the language used and give the words their plain meaning. A contract is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense[,]" **Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.**, 905 A.2d 462, 468 (Pa. 2006), or "if its terms are subject to more than one reasonable interpretation when applied to a particular set of facts." **Kropa v. Gateway Ford**, 974 A.2d 502, 508 (Pa.Super. 2009). An ambiguity in a policy is construed in favor of

the insured "to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." **Erie Ins. Exchange v. Conley**, 29 A.3d 389, 392 (Pa.Super. 2011).

At issue herein is UIM coverage under the GEICO policy. UIM coverage is intended to protect innocent victims of motor vehicle accidents when they are injured by motorists who have insufficient insurance to fully compensate them. However, there are limitations upon this type of coverage. The GEICO policy contains a "regular use" exclusion that precludes insureds or other members of the household from collecting UIM benefits when they are injured in a motor vehicle furnished or available for their "regular use" and which is not insured under the GEICO policy. In pertinent part, the at-issue exclusion in the GEICO policy provides that UIM coverage does not apply "[w]hen using a motor vehicle furnished for the regular use of **you**, **your** spouse, or a **relative** who resides in **your** household, which is not insured under this policy." GEICO policy, Amendment (01-15) to UIM Coverage, at 1. (emphasis in original).

We note that a similar regular use exclusion was held to be unambiguous in **Crum & Forster Personal Ins. Co. v. Travelers Corp.**, 631 A.2d 671, 673 (Pa.Super. 1993). Furthermore, our High Court has ruled that a "regular-use" exclusion does not violate the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701, *et seq.* or public policy. **See Williams v. GEICO**, 32 A.3d 1195 (Pa. 2011).

In granting summary judgment in favor of GEICO, the trial court found the facts in **Brink v. Erie Ins. Group**, 940 A.2d 528, 535 (Pa.Super. 2008), analogous to the facts herein. In **Brink**, this Court held that a police officer's use of a fleet vehicle was "regular" within the means of the exclusion even though the vehicle assigned to him to perform his job duties was not always the particular vehicle in which the accident occurred. We reasoned that the term "regular use" meant that a vehicle was "available" for the insured's use, and the vehicle need not be a particular vehicle. Herein, the trial court concluded that, as in **Brink**, [t]his rental vehicle was simply a replacement for the 'available' work vehicle."[1] Trial Court Opinion, 7/1/19, at 11.

Mr. Rawl contends, however, that the trial court erred in concluding that his employer's rental van that he only operated for one or two days prior to the accident was available for his regular use as a fleet vehicle. He maintains that this conclusion was "contrary to the Stipulation of Facts by the parties that the rental van was not part of the regular fleet of vehicles owned and operated by [Mr.] Rawl's employer, and that it was never available to him on any prior occasion." Mr. Rawl's brief at 13. He also argues that he did not have regular

---

[1] The trial court also cited **Mishler v. Erie Ins. Exchange**, 209 A.3d 544 (Pa.Super. Jan. 31, 2019), an unpublished memorandum of this Court. As such reliance violates Superior Court I.O.P. 65.39(B) (providing that, which exceptions inapplicable here, unpublished memorandum decisions filed prior to May 2, 2019 "shall not be relied upon or cited by a Court or a party"), we shall not consider it.

or habitual access to the rental van, and that his use of the vehicle on the day of the accident was purely incidental.

We find no merit in Mr. Rawl's argument. While the Joint Stipulation of Facts indicates that the rental van was not part of the fleet of Mr. Rawl's employer, it also establishes that it was a replacement vehicle for a fleet vehicle that was being repaired. **See** Trial Court Opinion, 7/1/19, at 2-3. For purposes of regular use, the vehicle furnished need not be a particular vehicle. **See Brink**, **supra** at 535. We reached a similar conclusion in **Nationwide Assur. Co. v. Easley**, 960 A.2d 843, 848 (Pa.Super. 2008), holding that the regular use exclusion applied where a cab driver leased a vehicle on *per diem* basis, selecting a vehicle from cab company's fleet, and was injured in the cab during his commute home. The fact that he did not operate the same taxi each day did not invalidate the "regularly used, non-owned vehicle" exclusion in his own policy.[2]

The parties herein stipulated that the van was a vehicle rented by Mr. Rawl's employer as a substitute for a fleet vehicle that was being repaired.

---

[2] **See also Calhoun v. Prudential General Ins. Company**, 2005 U.S. Dist. LEXIS 44302 (M.D. Pa. 2005) (holding that state trooper "regularly uses" a fleet vehicle if he regularly or habitually has access to vehicles in that fleet, and the fact that he had not driven Unit 15 prior to the accident did not take it out of the regular use); **Prudential v. Peppelman**, 2003 U.S. Dist. LEXIS 7650, *6-8 (E.D. Pa. 2003) (explaining that the regularity with which one operates a vehicle is of no consequence to enforcement of "regular use" exclusion; rather, availability of a vehicle from fleet controls); **accord Prudential Property & Casualty Insurance Co. v. Armstrong**, 2004 U.S. Dist. LEXIS 4918, *6-7 (E.D. Pa. 2004).

They further stipulated that Mr. Rawl used an employer-provided vehicle to perform his employment duties. The fact that the van herein was a temporary replacement for an employer-owned fleet vehicle, and that Mr. Rawl had only used this particular vehicle once or twice before, does not take it outside the regular use exclusion as interpreted in *Brink*. Stated simply, it does not matter whether Mr. Rawl had regular use of a particular vehicle furnished by his employer, but whether he regularly used a vehicle supplied by his employer.

Mr. Rawl contends that under the language in the instant policy, it is not only "regular use" which is determinative of the applicability of the exclusion. He maintains that the vehicle must be "furnished or available" for regular use. He argues that "[t]his implies an understanding with the owner of the vehicle that the insured could use the automobile of the other person at such times as he or she desired, if available." Mr. Rawl's brief at 19. It is his position, unsupported by any authority, that the vehicle was not "available" for his regular use because its use was restricted to employment-related purposes.

Regular use need not be unlimited use. As the foregoing employment vehicle cases illustrate, a vehicle available for an employee's use in performing his employment duties is furnished or available for regular use. "Furnished or available" does not mean unfettered use at any time for any purpose.

Mr. Rawl next claims that the trial court erred in concluding that the definitions in the liability section of the GEICO policy were "mutually exclusive"

of definitions in the UIM section of the document. He directs our attention to language in the UIM portion of the policy that incorporates definitions from the liability section of the policy.

We agree with Mr. Rawl that definitions in the liability section of the policy generally applied to the UIM coverage. *See* GEICO policy, Section IV Underinsured Motorists Coverage, at 13. ("DEFINITIONS -- The definitions or terms in Section I [Liability] apply to this coverage. The following definitions apply only to this [UIM] coverage.). However, we do not read the trial court opinion as concluding that the liability definitions and definitions contained in the UIM coverage provisions were mutually exclusive. Rather, the trial court stated that some definitions apply to certain coverage situations that are mutually exclusive. We find no error in the court's reasoning. The general policy definitions are incorporated into the various coverages, but do not apply on the facts in some coverage situations or are expressly superseded by more specific definitions in others.[3]

Mr. Rawl's third and fourth issues involve claims that the trial court erred in failing to give effect to the express terms of the policy. In his third issue, Mr. Rawl argues that the definition of "regular use" contained within the definition of a "non-owned auto" in the liability portion of the policy controls the meaning of "regular use" for purposes of UIM coverage. Since the rental

---

[3] More importantly, Mr. Rawl fails to explain how the trial court's allegedly erroneous view of the policy definitions led to an incorrect legal conclusion.

- 11 -

van Mr. Rawl operated at the time of the accident had only been rented for one or two days, *i.e.*, not more than the thirty days that constituted regular use of a "non-owned auto," he contends that this was not regular use for purposes of the regular use exclusion. **See** Appellant's brief at 30.

We note first that Mr. Rawl misrepresents the policy language when he points to the definition of a "non-owned auto" and equates it to a definition of "regular use." Regular use is not a defined term in the GEICO policy. The definition of a "non-owned auto" includes a vehicle that is "not owned by or furnished for the regular use of either the insured or a relative, other than a temporary substitute auto," and a non-owned auto "rented or leased for more than thirty days will be considered as furnished for regular use." GEICO policy, Section I, Liability Coverage, at 3. It certainly does not purport to circumscribe what constitutes regular use.

Mr. Rawl argues further that since the employer placed restrictions on the use of the furnished vehicles for personal use or for the transportation of passengers, these vehicles were not available for regular use. He suggests that if GEICO sought to exclude UIM coverage to its insureds, it could have provided a more specific definition of regular use, but failed to do so.

As noted above, regular use is an undefined term in the policy. Thus, we construe it based on the plain meaning of the words. For the reasons *supra*, Mr. Rawl's use of his employer's rental vehicle constituted regular use as construed through judicial decision.

Next, Mr. Rawl points to the definition of an "insured motor vehicle" for purposes of UIM coverage, and argues that the employer's rental van could not be considered a "temporary substitute" because that definition applied only to a vehicle that he owned. The definition reads:

3. Insured Motor Vehicle is a motor vehicle:

(a)    Described in the declarations and covered by the bodily injury liability coverage of this policy;

(b)    Temporarily substituted for an insured motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c)    Operated by you or your spouse if a resident of the same household.

But the term insured motor vehicle does not include:

(i) A motor vehicle used to carry passengers or goods for hire except in a carpool;

(ii) A motor vehicle being used without the owner's permission; or

**(iii) Under subparagraphs (b) and (c) above, a motor vehicle owned by or furnished for the regular use of an insured.**

GEICO Policy, Section IV UIM Coverage Amendment (01-15) at 1 (emphasis added).

Mr. Rawl maintains that GEICO asserted that the rental van was a temporary substitute for Mr. Rawl's work vehicle. However, he alleges that in denying the claim, GEICO did not rely on the plain and ordinary meaning of the term temporary substitute "in contravention of the express definition of a

temporary substitute as set forth in the subject policy." Mr. Rawl's brief at 32. He contends that when one reads the foregoing UIM definition of an "insured vehicle," which includes "a vehicle temporarily substituted or an insured motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction," together with the liability definition of a "temporary substitute auto" for purposes of an "owned auto," the definition is ambiguous. *Id*. at 33-34. He suggests, without any analysis, that if the "ambiguous" provisions were construed in his favor, he would be entitled to coverage. *Id*. at 34.

As the trial court noted, Exhibits 8 through 10 to Mr. Rawl's complaint, in conjunction with number 14 of the joint stipulated facts, confirm that GEICO denied the claim based on the "regular use" exclusion. After Mr. Rawl disputed that the van was "furnished for regular use" since his regular work van was being repaired, GEICO responded that "the van was a replacement vehicle for the van . . . Mr. Rawl uses for work that is furnished for his regular use." *See* Complaint, Exhibit 10 (GEICO correspondence dated Nov. 20, 2017). Thus, when it denied coverage, GEICO did not describe the rental van as a "temporary substitute" as defined in the policy.

We note, however, that the parties stipulated that "GEICO has denied Mr. Rawl's claim based on the regular use exclusion contained in the underinsured motorist policy amendment as GEICO believes the Dodge Ram rental van in question was a temporary substitute vehicle for Mr. Rawl's work

van." Joint Stipulation of Facts No. 14. The trial court, in arriving at its conclusion that the regular use exclusion applied, ascribed the plain and ordinary meaning to the foregoing words used in the stipulation.

We find no error in this regard as "temporary substitute vehicle" is not a defined term in the policy. The employer's rental van was not a "temporary substitute auto" as defined in the liability section of the policy because it was not a substitute for a vehicle **owned** by Mr. Rawl. It was not a "substitute motor vehicle" as defined in the UIM coverage section because, although Mr. Rawl was operating the van, it was **not insured** under Mr. Rawl's policy and it was regularly used. We find no ambiguity.

Finally, Mr. Rawl takes the trial court to task for allegedly misconstruing his argument that the "rental van did not constitute a 'temporary substitute' under the express terms of the subject policy." Mr. Rawl's brief at 34. Unfortunately, we find this claim to be both cryptic and undeveloped. Mr. Rawl does not reiterate for our benefit the substance of his argument to the trial court, discuss pertinent authorities, or explain why it matters to our disposition. **See** Pa.R.A.P. 2119(a), (b).

Our rules require that a litigant must set forth developed argument in his brief to this Court. Incorporating by reference claims advanced below is an "unacceptable manner of appellate advocacy." **See Commonwealth v. Edmiston**, 634 A.2d 1078, 1092 n. 3 (Pa. 1993). We are "not obliged to root through the record and determine what arguments, if any . . . were forwarded

- 15 -

below, nor are we obliged to fashion an argument on [a litigant's] behalf."

***Pines v. Farrell***, 848 A.2d 94, 97 n.3 (Pa. 2004).  This alleged error merits no relief.

For the foregoing reasons, Mr. Rawl has provided no reason for us to disturb the trial court's grant of summary judgment in favor of GEICO.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2020