**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3834
_____

RICHARD DUNCAN,

Appellant

v.

OMNI INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-01489)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 14, 2017
_____

Before:  VANASKIE, RENDELL, and FUENTES, *Circuit Judges*

(Filed: December 14, 2017)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this appeal from a District Court order enforcing a coverage exclusion in an automobile insurance policy, the car-accident victim, Appellant Richard Duncan, argues that public policies underlying Pennsylvania's Vehicle Code require us to decline to enforce the exclusion. He urges that the exclusion at issue—barring coverage for injuries caused by an unlicensed driver—undermines Pennsylvania's goal of ensuring that car-accident victims can collect on their judgments. But even if it does, other Pennsylvania policies, e.g., cost-containment and road safety, cut the opposite way, and our Court is ill-suited to balance these competing priorities. That role belongs to the Pennsylvania General Assembly. Accordingly, we will affirm the District Court's ruling that Appellant is not entitled to recover based on the insurance policy's exclusion for unlicensed drivers, and we will deny Appellant's request that we certify this issue to the Supreme Court of Pennsylvania.

## I.

On October 8, 2012, a car plowed into a Philadelphia public-transit bus on which Duncan was riding. The car was owned by Shamerka Renee Lamar, who had insured the car through Appellee Omni Insurance Company. But Lamar was not the driver—Chris Aaron, who had no driver's license, was behind the wheel.

Omni disclaimed coverage for injuries sustained by Duncan in the accident because Aaron lacked a driver's license and Lamar's insurance policy contained an exclusion for just such a circumstance. The exclusion stated:

A.     We do not provide Liability Coverage for any insured

. . .

2

> 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:
>
>> c. Does not have a valid driver's license; or
>>
>> d. Has a suspended or revoked driver's license.

(App. 142.)

After the accident, Duncan sued both Lamar and Aaron in Pennsylvania state court and was awarded a $28,000 judgment through court-directed arbitration. Duncan obtained from the vehicle owner and named insured, Lamar, an assignment of all rights against Omni. Duncan then sued Omni, again in state court, pleading two Pennsylvania bad-faith claims, *see* 42 Pa. Cons. Stat. Ann. § 8371, and requesting damages in excess of $50,000. Omni removed the case to the U.S. District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. (Omni contended that Duncan's damages request would exceed $75,000.) Omni moved for summary judgment and won. Duncan moved for reconsideration and lost. Duncan then filed this appeal from both orders.

## II.

Removal to the District Court was appropriate under 28 U.S.C. § 1441, and the District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over Duncan's appeal from the final order of the District Court under 28 U.S.C. § 1291.

Our review of the grant of summary judgment is plenary.[1]  *See Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005).

## III.

Duncan's appeal depends on his argument that Omni's unlicensed-driver exclusion should not be enforced because it violates Pennsylvania public policy.

Insurance policies are contracts subject to the principles of contract interpretation. *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005).  "When the language of [an insurance] policy is clear and unambiguous," a court must typically give effect to that language.  *Id.*  One exception is when a contract's terms conflict with "public policy."  *Burstein v. Prudential Prop. and Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002).  Wary of the "vague" and "formless" nature of public policy arguments, Pennsylvania takes a "circumspect posture" toward such arguments and requires the public policy on which a litigant relies to be "clearly expressed":  the policy must be capable of being "ascertained by reference to the laws and legal precedents," or plainly identifiable by "long government practice or statutory enactments" or "obvious ethical or moral standards."  *Id.* (quoting *Eichelman v. Nationwide Ins. Co.*, 771 A.2d 1006, 1008 (Pa. 1998)).  If these reliable indicators do not show that the supposed public policy is "clearly expressed," then "the Court should not assume to declare [the] contract[] . . . contrary to public policy," and should rather "be content to await legislative action." *Id.*  Similarly, when a case presents two or more policy interests in competition, one

---

[1] Duncan has not challenged the District Court's denial of his reconsideration motion, and we therefore will not consider that ruling.

4

counseling in favor of a contract's enforcement and the other against, a court may not hold the contract unenforceable on public-policy grounds, because the Pennsylvania Supreme Court has "consistently held" that "it is not . . . [for the] Court to weigh competing policy interests; rather that task is best suited for the legislature." *Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195, 1204 (Pa. 2011).

Here, Duncan rests his public-policy argument on two sections of Pennsylvania's Vehicle Code, and his view regarding their undergirding policy goals. The first section is Pennsylvania's Motor Vehicle Responsibility Law, which requires every car-registrant to obtain car insurance for their vehicle. 75 Pa. Cons. Stat. Ann. § 1786. The second section, located in the Vehicle Code's "Licensing of Drivers" chapter, states that a car owner is "jointly and severally liable" for any damages caused by the negligence of an unlicensed driver to whom the owner has lent his or her vehicle. *Id.* § 1574.

Duncan urges that these sections together support the remedial purposes behind the Vehicle Code: by requiring car owners to buy insurance, and then holding those owners liable for the negligence of the unlicensed drivers to whom the owners lend their cars, victims of tortfeasors without driver's licenses are ensured compensation through the car owner's insurance. In other words, Duncan sees the law as intending to protect victims just like him, since his tortfeasor lacked a license yet drove a car that was insured. From this, Duncan argues that Omni's exclusion—excluding coverage for liability stemming from accidents caused by an unlicensed driver—violates Pennsylvania's public policy because it undermines the statutory scheme and its remedial purposes.

5

To be sure, Duncan is correct about remedial purposes—one of the core goals of Pennsylvania's Motor Vehicle Responsibility Law is to provide tort victims with compensation for their injuries. *See Williams*, 32 A.3d at 1210 (Saylor, J., concurring) (emphasizing the "core remedial objectives" of the State's Vehicle Code); *id.* at 1210-11 (Baer, J., concurring) (same); *id.* at 1212 (Todd, J., concurring) (same). But there are also other policy goals behind the Vehicle Code's insurance and driver's license requirements: the insurance provisions are motivated at least in part by the goal of cost containment, *id.* at 1203-04 (majority opinion), and the licensing requirements can reasonably be attributed at least in part to goals of road safety, *see* 75 Pa. Cons. Stat. Ann. § 1501(a) (prohibiting individuals from driving without a license). Here, even if the remedial goals could be viewed as "clearly expressed" and weigh in Duncan's favor, the goals of cost containment and road safety appear to cut in the opposite direction, in support of court enforcement of Omni's policy exclusion: if the law were to prohibit the company from excluding from its policies any liability for accidents caused by unlicensed drivers, the cost of insurance would go up, and car owners would have one fewer disincentive to lending their car to unlicensed friends and family, perhaps making roads a bit less safe.

Of course, Duncan may be right that any slight increase in cost or decrease in safety would be well worth the price of furthering Pennsylvania's remedial goals, but it is not for us to say which side in this policy debate weighs most heavily. Given that we may not enter this thicket, we also may not declare Omni's exclusion contrary to public policy. Thus, Omni's unlicensed-driver exclusion applies.

6

**IV.**

In the alternative, Duncan requests that we certify his question about the enforceability of Omni's unlicensed-driver exclusion to the Pennsylvania Supreme Court. We may certify questions of state law to the state's highest court if and when the state has promulgated procedures to permit the certification. 3d Cir. L.A.R. 110.1 (2011). Pennsylvania permits certification when

> there are special and important reasons therefor, including, but not limited to, any of the following:
>
> (1) The question of law is one of first impression and is of such substantial public importance as to require prompt and definite resolution by this Court;
>
> (2) The question of law is one with respect to which there are conflicting decisions in other courts; or
>
> (3) The question of law concerns an unsettled issue of the constitutionality, construction, or application of a statute of this Commonwealth.

Pa. R. App. P. 3341.

Here, Duncan's question is one of first impression, but there are no directly conflicting decisions. Moreover, he has not shown that the issue presented is of such substantial public importance as to warrant certification to the Commonwealth's highest court. Indeed, all indications suggest the Pennsylvania Supreme Court would arrive at the same conclusion we have, because it has made plain that in instances where it is asked to weigh the competing policy interests undergirding the state's insurance laws, it defers to the legislature. *Williams*, 32 A.3d at 1203-04. This case is just such an instance. Further supporting our conclusion is the Pennsylvania Supreme Court's recent

7

summary denial of an appeal in a case involving a broader policy exclusion that effectively limited coverage to the named insured and barred coverage even for a permissive driver. *Byoung Suk An v. Victoria Fire and Ca. Co.*, 113 A.3d 1283, 1291-92 (Pa. Super. Co.), *appeal denied*, 634 Pa. 739 (2015). This suggests that the Court would similarly not accept certification in this case. Accordingly, Duncan's motion to certify the issue to the Supreme Court of Pennsylvania will be denied.[2]

## V.

We will affirm, and deny Appellant Richard Duncan's motion to certify a question to the Pennsylvania Supreme Court.

---

[2] To be sure, the Pennsylvania Supreme Court has held at least one policy exclusion unenforceable as against public policy, but that case, unlike this one, involved a straightforward application of one well-defined policy, that insurance-policy exclusions should not render policy coverage "illusory." *Heller v. Pa. League of Cities and Municipalities*, 32 A.3d 1213, 1223 (Pa. 2011). The same cannot be said for Duncan's case.